# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**MIGUEL ANGEL RIVERA ROSARIO,**

    **Plaintiff,**

    v.

**LSREF2 ISLAND HOLDINGS, LTD. INC., et al.,**

    **Defendants.**

**Civil No. 17-1918 (ADC)**

## OPINION & ORDER

Pending before the Court is defendant LSREF2 Island Holdings, Ltd. Inc.'s ("LSREF2") motion to dismiss plaintiff Miguel Angel Rivera-Rosario's ("Rivera") amended complaint. **ECF Nos. 7, 11.** Based on the following, the Court **GRANTS** the motion to dismiss at **ECF No. 11.**

**I.   Procedural Background**

Rivera filed his original complaint on June 2, 2017, in the Puerto Rico Court of First Instance, Río Grande Part (the Commonwealth Court), which LSREF2 removed to this Court on July 5, 2017, on diversity jurisdiction grounds. **ECF No. 1**. Rivera is a citizen of Puerto Rico while LSREF2 is incorporated in Bermuda and has no offices in Puerto Rico but is authorized to conduct business in Puerto Rico. **ECF No. 1** at 2. Rivera's amended complaint seeks recovery in tort for $5.5 million in compensatory damages and $1 million in punitive damages. **ECF No. 7**.

Rivera's complaint alleges a general theory of continuing tort, at times harkening to the specific torts of malicious prosecution or abuse of process, that arise out of a separate foreclosure case commenced in the Commonwealth Court on July 8, 2010, *FirstBank of Puerto Rico v. Miguel Angel Rivera Rosario, et al*, Civil No. FCCI2010-0449 (004) (the foreclosure case).[1] *Id.* at 3, 7–15. In that case, FirstBank sought to foreclose on mortgages executed by Rivera and secured by property located in Torrecilla Alta, Loíza. *Id.* at 4. The foreclosure case parties entered into a settlement agreement that was approved by the Commonwealth Court on August 1, 2011. *Id.* The settlement agreement provided Rivera with two twelve-month terms "to sell the mortgaged property for a sum of no less than 1.5 million dollars" during which time Rivera would pay FirstBank fixed monthly payments to "be jointly applied to the late charges, interest and indebted principal." *Id.* FirstBank subsequently agreed to partition the property to enable Rivera to sell a portion containing a business known as the Blue Iguana for $150,000 to a third party, Nahúm Gómez Hidalgo ("Gómez"). *Id.* at 5. The Blue Iguana portion of the property sold on February 13, 2012, and FirstBank received the $150,000 sale price at which time FirstBank "was obligated to release the portion of land sold to Mr. Gómez Hidalgo." *Id.* at 5–6. The amended complaint suggests that FirstBank did not actually fulfill this obligation and that it fell upon

---

[1] The parties have not submitted documents from the underlying Commonwealth Court proceedings. The parties also do not identify any of the other defendants in the foreclosure case besides Rivera. For simplicity, the Court refers to all defendants subject to the foreclosure case as "Rivera."

LSREF2 to partition the Blue Iguana parcel after it acquired Rivera's mortgages from FirstBank. *Id.* at 6–7. LSREF2 substituted as plaintiff in the foreclosure case on March 28, 2013. *Id.* at 6.

On December 19, 2013, LSREF2 filed a "Petition for Execution of Judgment" in the foreclosure case, seeking to initiate public auction of Rivera's mortgaged property. *Id.* at 7–8. LSREF2 included the Blue Iguana portion of the property in the petition, but for whatever reason, the "petition at that moment did not proceed." *Id.* at 8.

Some time later, in August 2014, LSREF2 "intervened with one of the tenants of the mortgaged property in which there was a Head Start program," allegedly "with the purpose of affecting negotiations that [Rivera] had with such tenant, preventing [Rivera] to obtain a better lease agreement which had lapsed and expired, also preventing [Rivera] to obtain qualification for a financing in order to pay its debt with creditor." *Id.* And in March 2015, while Rivera "had no legal representation," LSREF2 "incorrectly counseled" Rivera to assign LSREF2 "his inherited properties and the totality of his income." *Id.* Rivera's amended complaint also alleges that LSREF2 refuses to contact or directly negotiate with him, "thus intentionally prolonging the case." *Id.* at 11.

On March 5, 2015, LSREF2 proceeded again in the foreclosure case, filing a "Petition for New Order and Writ of Execution of Judgment," seeking public auction of Rivera's mortgaged property, including the Blue Iguana parcel. *Id.* at 8–9. A public auction was scheduled for September 11, 18, and 25, 2015. *Id.* at 9. Rivera filed for bankruptcy on September 10, 2015,

thereby freezing the foreclosure auction. *Id.* He voluntarily dismissed his bankruptcy case on January 14, 2016, and shortly thereafter, on February 9, 2016, LSREF2 moved to reinstate its petition in the foreclosure case against Rivera's property and the Blue Iguana parcel. *Id.*

Rivera responded with an opposition to LSREF2's renewed petition, arguing that Gómez must be joined as an indispensable party. Gómez separately moved to intervene some time later. *Id.* at 9–10. According to the amended complaint, the Commonwealth Court conducted a hearing in the foreclosure case on September 8, 2016, followed by two evidentiary hearings on November 15 and December 22, 2016, before entering judgment on February 6, 2017. *Id.* at 10–11. According to the amended complaint, the Commonwealth Court granted Gómez's motion to intervene, admonished LSREF2 for opposing the intervention, ordered LSREF2 to partition the Blue Iguana parcel from the property that is subject to Rivera's mortgages, and ordered LSREF2 to pay Gómez $5,000 "for [its] temerity" and as attorney fees and expenses. *Id.* at 11–12. LSREF2 filed a motion to reconsider in the Commonwealth Court that LSREF2 asserts was recently decided in its favor. **ECF Nos. 11** at 20; **22**.

Rivera filed this separate action, originally in the Commonwealth Court, on June 2, 2017, seeking monetary damages based on a general theory of continuing tort under P.R. Laws Ann. tit. 31, § 5141. **ECF Nos. 1-2; 7** at 12. Rivera describes LSREF2's actions "as part of a series of continuous acts, all based on the disregard of the sale in favor of Mr. Nahúm Gómez of the piece of land where the business Blue Iguana was located, and the inclusion of said piece of land in

the foreclosure proceedings." **ECF No. 7** at 7–8. Rivera repeatedly alleges in the amended complaint that LSREF2 proceeded in the foreclosure case with the malicious intent to deceive, threaten, take advantage, harass, and coerce Rivera in order "to obtain an unjust enrichment," specifically, more money than it was entitled to in the foreclosure case and the avoidance of segregation proceedings. *Id.* at 7–10. LSREF2 removed the case to this Court and filed for dismissal on the grounds that the amended complaint fails to state a claim upon which relief can be granted. Alternatively, LSREF2 argues for dismissal on the basis that Rivera's tort claim is barred by the statute of limitations. **ECF No. 11** at 1, 3–4.

II.     **Legal Standard**

In reviewing a motion for failure to state a claim upon which relief must be granted, the Court accepts "as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (citation and internal quotation marks omitted). "[A] complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 53 (quoting Fed. R. Civ. P. 8(a)(2)). "While detailed factual allegations are not necessary to survive a motion to dismiss for failure to state a claim, a complaint nonetheless must contain more than a rote recital of the elements of a cause of action" and "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id*. (additional citation and internal quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). To ascertain

plausibility, "the court must sift through the averments in the complaint, separating conclusory legal allegations (which may be disregarded) from allegations of fact (which must be credited)." *Id.* Then, "the court must consider whether the winnowed residue of factual allegations gives rise to a plausible claim to relief." *Id.* (noting that a complaint need not "establish a prima facie case" to defeat a rule 12(b)(6) motion to dismiss (citation and internal quotation marks omitted)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc). This analysis does not require a court to "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely.'" *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (omission in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Additionally, "it is sometimes permissible to grant a motion to dismiss based on an affirmative defense, such as the statute of limitations. That happens when the pleader's allegations leave no doubt that an asserted claim is time-barred." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005) (citation and internal quotation marks omitted).

### III. Analysis

Rivera's amended complaint alleges a general theory of continuing tort based on Puerto Rico's broad negligence statute. He alludes to the concepts of malicious prosecution and abuse

of process in the amended complaint and in his response to LSREF2's motion to dismiss. **ECF Nos. 7**; **14** at 19–20.

"Federal courts sitting in diversity apply the substantive law of the state and, pursuant to statute, Puerto Rico is treated as a state for diversity purposes." *Quality Cleaning Prods. R.C., Inc. v. SCA Tissue N. Am., LLC*, 794 F.3d 200, 204 (1st Cir. 2015). State substantive law includes "the relevant state's statute of limitations, including its accrual rules." *Id.* at 205. Under Puerto Rico law, "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. There are three elements to a negligence claim: "(1) a negligent act or omission, (2) damages, and (3) a causal relationship between them." *Acevedo-Reinoso v. Iberia Líneas Aéreas de España S.A.*, 449 F.3d 7, 15 (1st Cir. 2006) (citation and internal quotation marks omitted).

The conduct at the heart of Rivera's amended complaint is LSREF2's failure to acknowledge the legal import of the Blue Iguana sale in the foreclosure case. LSREF2 allegedly wilfully and repeatedly ignored the Blue Iguana sale in its three petitions for execution of judgment and its subsequent filings in support thereof, beginning with its December 19, 2013 petition for execution of judgment and proceeding most recently with its September 6, 2016 opposition to Gómez's motion to intervene. LSREF2 advanced this tactic after assuming FirstBank's position in the foreclosure case and settlement agreement. Additionally, Rivera

provided LSREF2 with the paperwork supporting and detailing the partition arrangement when LSREF2 substituted FirstBank. **ECF No. 7** at 6.

To allow Rivera's continuing negligence claim to proceed, the Court must first accept the underlying premise that engaging in allegedly frivolous litigation constitutes negligent conduct. Puerto Rico law permits two limited theories under the penumbra of the general negligence statute in which engagement in legal proceedings may constitute a form of negligence: abuse of process and malicious prosecution. *See Bonilla v. Trebol Motors Corp.*, 913 F. Supp. 655, 659 (D.P.R. Dec. 19, 1995) (JP). Otherwise, Puerto Rico law appears to limit a party's recovery from frivolous or harassing litigation and "obstinate" litigants to requests for attorney fees and costs under the applicable rules. *See* P.R. Laws Ann. tit. 32 App. III, § 44.1(d) ("In the event any party or its lawyer has acted obstinately or frivolously, the court shall, in its judgment, impose on such person the payment of a sum for attorney's fees which the court decides corresponds to such conduct."); *cf.* Fed. R. Civ. P. 11(c). Accordingly, Rivera's amended complaint may proceed if his allegations satisfy the pleading standard for malicious prosecution or abuse of process.

"A malicious prosecution claim under Puerto Rico law has four elements: (1) the defendant instituted a criminal [or civil] action against the plaintiff; (2) the action was terminated in favor of the plaintiff; (3) the defendant acted with malice and without probable cause; and (4) the plaintiff suffered damages." *González-Rucci v. U.S. I.N.S.*, 539 F.3d 66, 69 (1st Cir. 2008) (citation omitted). *See also MVM Inc. v. Rodríguez*, 568 F.Supp.2d 158, 179 (D.P.R. July 28, 2008)

(FAB); *Fonseca v. Oyola,* P.R. Offic. Trans. 77 P.R.R. 496, 499 (1954) (upholding malicious prosecution verdict based on the defendant's having filed three separate eviction suits against the plaintiff, two of which he abandoned before pursuing the third). An action for malicious prosecution will only be successful in "extreme circumstances." *See Giménez Álverez v. Silén Maldonado*, P.R. Offic. Trans. 1992 WL 754904 (P.R. 1992). A malicious prosecution cause of action accrues when the malicious proceeding concludes. *See Bonilla*, 913 F.Supp. at 659. Here, both parties agree that the underlying action has not terminated; the foreclosure case remains ongoing. **ECF Nos. 7** at 11; **11** at 6; **22**. Thus, to the extent Rivera seeks recovery on a theory of malicious prosecution, which is not abundantly clear, Rivera's claim is premature. *Compare* **ECF No. 7** at 7–15 *with* **ECF No. 14** at 19.

Next, the Court addresses whether Rivera's amended complaint adequately pleads a claim for abuse of process. "A plaintiff must prove two elements to make out a claim for abuse of process under Puerto Rico law: (1) that the defendant had a bad motive; and (2) that it used the legal process for an improper, collateral objective." *González-Rucci*, 539 F.3d at 71. "In contrast to malicious prosecution claims, which are generally directed to a legal action as a whole, abuse of process claims typically cover[] challenges to the legal action's procedural components, such as subpoenas or discovery mechanisms." *Id.* (citation and internal quotation marks omitted) (alteration in original).

Here, Rivera asserts that LSREF2 repeatedly filed petitions for execution of judgment and opposed his and Gómez's motions supporting Gómez's intervention for the "improper, collateral objectives" of avoiding segregation proceedings and obtaining more money than it knew it was entitled to under the mortgages. In other words, according to the allegations in the complaint and the inferences supported therein, LSREF2 repeatedly filed what may have been an otherwise valid foreclosure action with the hopes of gaining more money than it was entitled to by including property that it knew was no longer subject to the mortgages at issue while simultaneously avoiding segregation proceedings. The Court finds this sufficient to state a claim of abuse of process under the standard outlined by the First Circuit Court of Appeals.[2]

However, the Court finds that Rivera has not alleged sufficient facts to preclude dismissal on statute of limitations grounds. The abuse of process claim is subject to a one-year statute of limitations under Puerto Rico's negligence statute. P.R. Laws Ann. tit. 31, § 5298(2). Rivera filed his original complaint in the Commonwealth Court on June 2, 2017. Thus, any act occurring before June 2, 2016, is time barred unless the continuing tort doctrine applies. The continuing tort doctrine "allows a plaintiff to incorporate allegations that would ordinarily be time-barred if they are part of the same unlawful . . . practice and at least one act falls within the time period." *Ayala-Sepúlveda v. Municipality of San Germán*, 671 F.3d 24, 29 (1st Cir. 2012). In continuous tort

---

[2] LSREF2 argues that dismissal is also warranted because malicious prosecution and abuse of process "claims are extremely rare in Puerto Rico" and infrequently successful. **ECF No. 11** at 3. The relevant standard of review for a motion to dismiss is not based on whether the claim is unique or likely to succeed. *See Ocasio-Hernández,* 640 F.3d at 13.

cases, "the statute of limitations begins to run when the tortious conduct ceases, not when it first takes place." *Torres v. Hospital San Cristobal*, 831 F.Supp.2d 540, 544 (D.P.R. Dec. 9, 2011) (SEC) (citing *Arcelay v. Sanchez*, 77 D.P.R. 824, 838 (1955)).

LSREF2 argues that Rivera's claim does not fall under the continuing tort doctrine, citing *Rivera-Ruiz v. Ponce*, 196 D.P.R. 410 (2016), for support. **ECF No. 11** at 11–12. There, the Supreme Court of Puerto Rico held that the limitations period arising from a continuous tort begins when the final tortuous act or omission is verified, or the damages become final and definite, whichever occurs later. *Id.* (Court's own translation). In doing so, the Supreme Court reiterated the distinction between the successive tort doctrine and the continuing tort doctrine. A successive tort is a chain of individual torts that occur within a finite timeframe, where each tort creates an independent cause of action. The defining characteristic of a successive tort is that one cannot foresee that the harm will be repeated. *Id*. Thus, "under Puerto Rico law, a continuous tort arises from ongoing unlawful conduct, rather than a continuing harmful effect." *Torres*, 831 F. Supp. 2d at 544.

Here, Rivera alleges that the tortious conduct began with LSREF2's December 19, 2013 petition for execution and continued with its March 5, 2015 petition, its February 9, 2016 petition, its September 6, 2016 opposition to Gómez's petition to intervene, and its arguments in furtherance of its alleged frivolous position during the September 8, November 15, and December 22, 2016 hearings thereon. **ECF No. 7** at 10. The amended complaint also suggests that

LSREF2's request to the Commonwealth Court for reconsideration is yet another tortious act. The alleged damages from each of these acts are not foreseeable from the beginning of the alleged tort, i.e., LSREF2's December 19, 2013 petition for execution of judgment. Thus, Rivera's complaint does not allege a continuous tort. Instead, it alleges successive torts by LSREF2, each of which generates its own cause of action that does not toll the limitations period of the others.

The statute of limitations runs backwards one year from the June 2, 2017 complaint filing date. LSREF2's actions falling within the limitations period consist of its opposition to Rivera and Gómez's filings in response to its third petition for foreclosure, while the third foreclosure petition itself falls outside of the limitations period because it was filed on February 9, 2016. LSREF2's oppositions in the Commonwealth Court, particularly in light of the recent Court of Appeals ruling in that case in LSREF2's favor, are insufficient to constitute an abuse of process claim. **ECF No. 22-1.** Accordingly, LSREF2's motion to dismiss at **ECF No. 11** is **GRANTED**.

IV. **Conclusion**

LSREF2's motion to dismiss at **ECF No. 11** is **GRANTED**. Rivera's complaint is dismissed with prejudice. The Clerk of Court shall enter judgment accordingly and close this case.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 30th day of March, 2018.

**S/AIDA M. DELGADO-COLÓN**
**Chief United States District Judge**